**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YAW AMPONSAH, | : CIVIL ACTION NO. 08-114 (MLC) |
| Petitioner, | : **MEMORANDUM OPINION** |
| v. | : |
| UNITED STATES OF AMERICA, | : |
| Respondent. | : |

**COOPER, District Judge**

This matter comes before the Court on the pro se motion of Yaw Amponsah ("petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  The underlying criminal case in this Court was United States v. Amponsah, Crim. No. 01-479 (MLC).  Petitioner contends that he received ineffective assistance of counsel in the sentencing process and on appeal, resulting in his failure to obtain "safety valve" relief under § 5C1.2 of the U.S. Sentencing Guidelines ("Guidelines").  For the following reasons, issued without oral argument, see Fed.R.Civ.P. 78(b), the Court will deny the 28 U.S.C. § 2255 motion and decline to issue a certificate of appealability.[1]

---

[1] All of the records filed in this matter are on the electronically maintained docket as the following numbered docket entries ("dkt."):  § 2255 Motion (dkt. 1), with supporting brief (dkt. 1-1); supplemental brief of petitioner (dkt. 2); Miller notice (dkt. 3); petitioner's response to Miller notice (dkt. 5); respondent's Answer (dkt. 10); respondent's supporting brief (dkt. 11) with exhibits: plea transcript (dkt. 11-2, Ex. A); defendant's 3-7-05 sentencing memorandum (dkt. 11-3, Ex. B); government's 3-15-05 sentencing memorandum (dkt. 11-4, Ex. C);

**BACKGROUND**

Petitioner, a citizen of Ghana, entered the United States on a student visa and thereafter remained in this country illegally. He came under investigation in a federal narcotics investigation around 2001.  See United States v. Amponsah, 247 Fed.Appx. 395, 396 (3d Cir. 2007).  On July 19, 2001, petitioner was charged in a one-count indictment with conspiracy to distribute and possess more than 500 grams of cocaine, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), in violation of 21 U.S.C. § 846, an offense that carries a mandatory minimum term of imprisonment of 5 years and a maximum term of imprisonment of 40 years.[2]  Id. at

---

defendant's 3-24-05 reply sentencing memorandum (dkt. 11-5, Ex. D); transcripts of 4-28-05, 5-27-05, and 7-22-05 sentencing hearing (dkts. 11-6 & 11-7, Ex. E); [same documents as dkts. 10 and 11 also filed as dkt. 16]; and petitioner's traverse brief, with attached exhibits 1-4 (dkt. 17).  The record in the underlying criminal case, Crim. No. 01-479, also includes the written plea agreement, dated 9-24-01 (not docketed; parties have copies); the revised presentence report ("PSR"), dated 3-18-02 (not docketed; parties have copies); the Judgment of Conviction entered 7-28-05 (dkt. 27); the Judgment of affirmance (dkt. 39-1); and the Opinion of the Court of Appeals (dkt. 39-2).

[2]  Section 841(a)(1) renders it unlawful for any person knowingly or intentionally "to manufacture, distribute, or dispense, or possess with an intent to manufacture, distribute, or dispense, a controlled substance."  21 U.S.C. § 841(a)(1).  Section 841(b)(1)(B) provides, in relevant part, that an individual who violates § 841(a) by committing an offense that involves more than 500 grams of cocaine "shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years."  Id. § 841(b)(1)(B).  Section 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter to be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  Id. § 846.

397. At his arraignment in August 2001, this Court placed him under pretrial supervision, requiring him to surrender his travel documents and remain within the New York-New Jersey metropolitan area. Id.

Petitioner entered into a written plea agreement with the government which included the following stipulations concerning application of the Guidelines:  (1) the offense involved at least 5 but less than 15 kilograms of cocaine, resulting in a base offense level of 32 under § 2D1.1(c)(4); (2) if his cooperation with the government continued through the date of sentencing, he would be entitled to a 2-level reduction for acceptance of responsibility pursuant to § 3E1.1(a); (3) based on his willingness to plead guilty, he would be entitled to an additional 1-level reduction for acceptance of responsibility pursuant to § 3E1.1(b); (4) because he did not play an aggravating or a mitigating role in the offense, there would be neither an increase nor a decrease in offense level pursuant to § 3B1.1 or § 3B1.2, respectively; and (5) based on the foregoing, the total offense level would be 29.[3]  (Plea Agr. at 7-8.)

---

[3]  If petitioner had received a total offense level score of 29 as calculated in his plea agreement, and if he had also received safety valve relief under § 5C1.2, he would have been entitled to an additional 2-level downward adjustment to his offense level under § 2D1.1(b)(7).  His resulting advisory guideline range for imprisonment, based on total offense level 27 and criminal history category I, would have been 70-87 months. Thus, safety valve relief would have taken two extra points off his total offense level but as a practical matter it would not

The plea agreement also provided that the government retained sole discretion to determine whether petitioner fully complied with the terms of the agreement and to seek a reduction for substantial assistance pursuant to § 5K1.1.  (Id. at 4.)  The plea agreement further stated that "[t]he sentence to be imposed upon [petitioner] is within the sole discretion of the sentencing judge" and the government "cannot and does not make any representation or promise as to what guideline range will be found applicable . . . or as to what sentence [petitioner] will ultimately receive."  Id. at 3.

This Court conducted a three-day sentencing hearing that concluded on July 25, 2005, after significant events had transpired subsequent to the entry of petitioner's guilty plea on December 19, 2001.  Those events are described below.  At sentencing, this Court enforced the stipulations concerning drug quantity set forth in the plea agreement, but imposed a 2-level enhancement for obstruction of justice, denied petitioner any reductions for minor role or for acceptance of responsibility, and found him ineligible for safety valve relief.  We also found that the government did not act in bad faith by declining to move for a § 5K1.1 reduction for substantial assistance.  The

---

have brought him below the statutory mandatory minimum of five years.  That was because his stipulated drug quantity of 5 to 15 kilograms of cocaine gave him the relatively high base offense level of 32 as a starting point.

4

resulting total offense level was 34 which, when combined with a criminal history category of I, resulted in an advisory guideline range of 151 to 188 months of imprisonment.[4] The sentence of imprisonment imposed by this Court was 155 months, at the low end of the advisory guideline range.

Petitioner appealed, asserting numerous sentencing errors including the denial of safety valve relief. He was represented on appeal by CJA appointed counsel, the same counsel who represented him in this Court. He was also permitted to file pro se supplemental briefing, which the Court of Appeals accepted and considered in rendering its rulings. The Court of Appeals affirmed in all respects, in a detailed non-precedential opinion that addressed each of petitioner's asserted points of error.

The decision on appeal summarized the district court record and findings on the events that took place between entry of the guilty plea and petitioner's sentencing date as follows:

> Several significant developments took place before his sentencing. In February 2003, Joe Mensah, a close friend of [petitioner's], was tried on a related federal drug-trafficking charge. Although the government interviewed [petitioner] in preparation for Mensah's trial, federal prosecutors decided not to call [petitioner] as a witness because of his "evasiveness" during pre-trial

---

[4] Between the time petitioner pleaded guilty and his sentencing, the Supreme Court issued its decision in United States v. Booker, 543 U.S. 220 (2005), which rendered the Guidelines advisory. In calculating petitioner's advisory sentencing range, this District Court applied the 2004 version of the Guidelines.

>preparation. At his trial, Mensah testified that prior to his indictment, [petitioner] tipped him off about the government's investigation and informed him that the government attempted to persuade him to wear a wire and record their conversations. Although much of Mensah's trial testimony was not credible, the government believed this aspect of his testimony because, aside from government agents involved in the investigation, [petitioner] was the only individual who knew about the wire request.
>
>In April 2003, after Mensah was convicted, the government confronted [petitioner] about Mensah's trial testimony. [Petitioner] denied that he had informed Mensah about the government's investigation, but could not explain how Mensah learned about the wire request. As a result, the government informed [petitioner] that his § 5K1 letter was in jeopardy. Several days later, [petitioner] fraudulently obtained travel documents from the Ghanian consulate in New York and, on April 23, 2003, fled to Ghana. In August 2003, Ghanian authorities arrested [petitioner] and extradited him to the United States.

Amponsah, 247 Fed.Appx. at 397-98.

The judgment of the Court of Appeals was filed on September 10, 2007.

This motion under 28 U.S.C. § 2255 was filed on January 9, 2008, which was timely under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1). This Court issued petitioner a Miller notice by Order filed on March 26, 2008. (Dkt. 3.) He responded, stating his intention to proceed with the petition as a 28 U.S.C. § 2255 motion as filed. (Dkt. 5.) The government, on July 3, 2008, filed an Answer to the petition, and a memorandum in opposition, arguing the petition (1) collaterally

6

attacks issues that have already been litigated or waived, and (2) defense counsel was not ineffective. (Dkts. 10, 11.) Petitioner filed a traverse brief with exhibits on July 28, 2008. (Dkt. 17.)

## **DISCUSSION**

Under 28 U.S.C. § 2255:

> A prisoner in custody under sentence of a [federal] court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the motion. United States v. Abbott, 975 F.Supp. 703, 705 (E.D. Pa. 1997).

Here we quote, verbatim, petitioner's asserted claims of ineffective assistance of counsel, as set forth on the petition form:

> GROUND ONE:  Petitioner received ineffective assistance of counsel since his attorney failed to challenge the government assertion, at the sentencing hearing that petitioner statements about Joe Mensah were inconsistent and thereby denied petitioner a safety valve 18 USC 3553(f).
> (a)  Supporting facts:
> (A)  Petitioner counsel failure to forcefully challenge the government assertion at the sentencing hearing that petitioner statements about

7

>Joe Mensah criminal activities were inconsistent, and thereby denied petitioner a safety valve provision 18 USC 3553(f) USSG 5C1.2 as recommended by the presentence report (PSR) at paragraph (25).
>(B)  Counsel's failure to object to government's late objection of the presentence report (PSR).
>
>GROUND TWO: The counsel was ineffective on direct appeal for failure to appeal the District Court's wrongful denial of a two-level downward adjustment for a safety valve.
>(a)  Supporting facts:
>The probation officer recommended in the presentence report a two-level downward adjustment for a safety valve provisions 18 USC 3553(f) USSG 5C1.2, for the petitioner timely and truthfully disclosed his involvement in the conspiracy.  At the sentencing, the government objected it contending that the defendant has provided inconsistent statements.  The District Court accepted the government's argument and denied the defendant a two-level downward adjustment under a safety valve provision 18 USC 3553(f) USSG 5C1.2.

(Pet. at 5-6.)

We read petitioner's motion and supporting memoranda to assert several claims:  (1) ineffective assistance of counsel in this Court for failure to challenge factually the government's assertion at the sentencing hearing that petitioner's statements about Joe Mensah were inconsistent; (2) ineffective assistance of counsel in this Court for failure to challenge the government's "late" objection to the PSR recommendation that petitioner should receive safety valve relief; and (3) ineffective assistance of counsel on direct appeal for failing to raise the same two points.

8

We hold that to the extent that the petition alleges sentencing error in this Court's refusal to afford petitioner safety valve relief, his claim of sentencing error is not subject to collateral attack because it has been adjudicated on direct appeal.  We also find no merit to his claims of ineffective assistance of counsel.  These conclusions are based upon an examination of the record, which reveals no issues requiring an evidentiary hearing.  See United States v. McCoy, 410 F.3d 124, 131-35 (3d Cir. 2005).

**1. Claim of Sentencing Error**

Reading petitioner's pro se motion liberally, as is appropriate, Haines v. Kerner, 404 U.S. 519, 520 (1972); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), we surmise that he may be attempting to raise again on collateral attack an argument of error in sentencing.  This argument is foreclosed by the decision of the Court of Appeals in his direct appeal.  There it held that the District Court did not err in denying petitioner safety valve relief, stating as follows:

> Amponsah argues that the District Court did not identify any useful information that he could have provided to the government and, therefore, should have granted him a safety valve reduction.  Amponsah's argument is contradicted by the record, which shows that he provided the government with vague and contradictory information concerning Joe Mensah's drug-trafficking activities.  We therefore find no error in the District Court's conclusion that:

9

> The fact that he was not consistent concerning what he knew about [Joe] Mensah's criminal activity and the fact that he did nothing to correct his inconsistent responses to the Government in time for the Government either to make use of Mr. Amponsah's information at Mensah's trial or even down to today . . . leads this Court to conclude that Mr. Amponsah is not entitled to the safety valve.

Amponsah, 247 Fed.Appx. at 401 (citing Appellee's Appx. at 310).

We cannot revisit that ruling here, as a petitioner "may not relitigate issues that were decided adversely to him on direct appeal by means of a Section 2255 petition." Sonneberg v. United States, No. 01-2067, 2003 WL 1798982, at *2 (3d Cir. Apr. 4, 2003) (citing United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993)).

**2. Claims of Ineffective Assistance of Counsel**

Petitioner asserts his claims under the theory of ineffective assistance of counsel. The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "A defendant has a Sixth Amendment right not just to counsel, but to 'reasonably effective assistance' of counsel." United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). The Supreme Court in Strickland has set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

10

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland, 466 U.S. at 687. As with any other claim under 28 U.S.C. § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. Gov't of Virgin Islands v. Nicholas, 759 F.2d 1073, 1081 (3d Cir. 1985).

The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. A petitioner asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. Courts must recognize the strong presumption that counsel has rendered adequate assistance and that all significant decisions were made in the exercise of reasonable professional judgment. Id. at 689; see also Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999); Reese v. Fulcomer, 946 F.2d 247, 256-57 (3d Cir. 1991); United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). The evaluation of the

11

objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).

The second prong of the Strickland test requires the petitioner to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. The petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The Strickland Court further held that both prongs must be established in order to meet the petitioner's burden, and that if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance
> component of an ineffectiveness claim prior to the
> prejudice component, there is no reason for a court
> deciding an ineffective assistance claim to
> approach the inquiry in the same order or even to
> address both components of the inquiry if the
> defendant makes an insufficient showing on one. . .
> . If it is easier to dispose of an ineffectiveness
> claim on the ground of lack of sufficient
> prejudice, which we expect will often be so, that
> course should be followed.  Courts should strive to
> ensure that ineffectiveness claims not become so

12

>     burdensome to defense counsel that the entire
>     criminal justice system suffers as a result.

Id. at 697.

The court must accept the truth of the petitioner's non frivolous factual allegations and examine them to see if those claims conclusively satisfy both prongs of the Strickland test. The court, of course, can reject clearly frivolous claims, Gov't of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1998), and dispose of vague or unelaborated assertions as insufficient. Blackledge v. Allison, 431 U.S. 63, 74 (1977); United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988).

Where defense counsel fails to seek an arguably available minor role reduction, or fails to object to an improper enhancement under the Guidelines, counsel has rendered ineffective assistance and the issue becomes whether petitioner suffered prejudice by reason of such failure. See Jansen v. United States, 369 F.3d 237, 243-44 (3d Cir. 2004) (citing United States v. Headley, 923 F.2d 1079, 1084 (3d Cir. 1991)).  However, counsel is not ineffective for failing to raise every conceivable argument at sentencing, regardless of lack of merit.  In order to obtain relief on this ground a petitioner must demonstrate that (1) his attorney did not provide reasonably effective assistance, and (2) but for counsel's errors, there is a reasonable probability that the result of the proceedings would have been different, i.e., the Court would have imposed a lower sentence,

13

or petitioner would not have pled guilty.  <u>Glover v. United States</u>, 531 U.S. 198, 202-04 (2001); <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985); <u>Strickland</u>, 466 U.S. at 687.

   The sentencing hearing in this case established, and the Court of Appeals so ruled, that the "record . . . shows that he provided the government with vague and contradictory information concerning Joe Mensah's drug-trafficking activities."  <u>Amponsah</u>, 247 Fed.Appx. at 401.  The Court of Appeals therefore found no error in this Court's factual finding that "[petitioner] was not consistent concerning what he knew about [Joe] Mensah's criminal activity and the fact that he did nothing to correct his inconsistent responses to the Government in time for the Government either to make use of Mr. Amponsah's information at Mensah's trial or even down to [the sentencing day]."  <u>Id.</u>

   This Court conducted a lengthy, three-day sentencing hearing that included direct and cross-examination of the case agent. (Dkt. 11-6, Ex. E at 43-149; dkt. 11-7, Ex. E at 150-163.)  The Court reached its own factual findings that petitioner had made inconsistent statements to the government.  That searching inquiry by the Court was done at the behest of defense counsel, who vigorously advocated in briefing and at the hearing that petitioner should receive safety valve relief and the other favorable adjustments he sought.  We find no failure to advocate effectively, and no prejudice to petitioner, in any of the

14

proceedings that resulted in the unfavorable rulings by this Court.  Our finding on this point also controls petitioner's claim of ineffective assistance of counsel on appeal, for the reasons stated by the Court of Appeals in the above-quoted portion of its decision affirming the conviction and sentence.

We likewise find no ineffective assistance of defense counsel, either in the sentencing proceedings or on direct appeal, for failure to raise what would have been a frivolous argument that the government's objection to the PSR recommendation for safety valve relief was untimely.  The PSR was issued before petitioner made his inconsistent statements to the government as the Mensah trial was approaching, and before petitioner fled to Ghana and had to be re-arrested and extradited.  See supra n.1.

This Court found at sentencing, and the Court of Appeals confirmed on appeal, that petitioner's own conduct after pleading guilty and before sentencing constituted "significant developments" that changed the necessary factual analysis under the Guidelines and the sentencing statute.  See Amponsah, 247 Fed.Appx. at 397.  We find that any argument by defense counsel, at sentencing or on direct appeal, that the government was untimely in objecting to contents of the PSR based on prior events without accounting for those "significant developments,"

15

would have been futile.[5]  Therefore, we conclude that there was no ineffective assistance of counsel for failure to raise such an argument.

## **CONCLUSION**

The Court finds that petitioner has not met his burden to establish his claims in this motion under 28 U.S.C. § 2255. Based upon our review of the record, we hold that petitioner was not deprived of his Sixth Amendment right to the effective assistance of counsel, either in the sentencing process or in his direct appeal of the sentence.  Accordingly, this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence must be denied.

No certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c).  Cf. Fed.R.App.P. 22; Local App.R. 22.2.  A certificate of appealability is issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); United States v. Cepero, 224 F.3d 256, 267-68 (3d Cir. 2000).  For the reasons discussed

---

[5] The safety valve statute, 18 U.S.C. § 3553(f), and the corresponding guidelines provision, U.S.S.G. § 5C1.2, each provide that the defendant's truthfulness must be measured not later than the time of the sentencing hearing.  That determination must be made by the sentencing court, which is not bound by any recommendations in the PSR.

above, the petition does not assert constitutional claims that can be redressed in this 28 U.S.C. § 2255 motion.  The Court will issue an appropriate Order and Judgment.

                                           s/ Mary L. Cooper
                                           **MARY L. COOPER**
                                           United States District Judge

Dated:  April 2, 2009